[Docket Nos. 8, 11.]

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

GURVINDER SINGH,
*on his behalf and on behalf of others similarly situated*,

        Plaintiff,

    v.

A&H LOGISTICS CORP. and
ABDELRAHMAN ADELHAMID *a/k/a*
Abdel Rahman,

        Defendants.

Civil No. 23-4386 (RMB/SAK)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiff Gurvinder Singh asks this Court to enter default judgment against Defendants A&H Logistics Corp. (A&H) and Abdelrahman Adelhamid (Rahman). Singh claims Defendants employed him as a truck driver, but they never paid him for his services. By not paying him, Singh contends Defendants violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206 *et seq.*, the New Jersey Wage Payment Law (NJWPL), N.J. Stat. Ann. §§ 34:11-4.1 *et seq.*, and the New Jersey Wage and Hour Law (NJWHL), N.J. Stat. Ann. §§ 34:11-56a *et seq.* Singh seeks, among other things, unpaid compensation, statutory liquidated damages, and attorney's fees.

For the below reasons, the Court **GRANTS**, **in part**, and **RESERVES**, **in part**, Singh's motion for default judgment (Docket No. 8), and **RESERVES** on Singh's motion for attorney's fees (Docket No. 11). By Federal Rule of Civil Procedure 55(b)(2)(B), the Court

refers this matter to Magistrate Judge King for an evidentiary hearing to determine Singh's damages and attorney's fees.

## I.    BACKGROUND

A&H is a shipping company that purchases and handles "goods moved in interstate commerce." [Compl. ¶¶ 11-12 (Docket No. 1).] Rahman owns, operates, and manages A&H, and is also its registered agent. [*Id.* ¶ 13.] Rahman hires and fires employees, supervises and controls employee work schedules and conditions of employment, and so on. [*Id.*]

Rahman hired Singh to work as a truck driver for A&H. [*Id.* ¶¶ 14, 26.] Rahman supervised him and provided him with his work schedule and the locations where he had to pickup and drop-off loads. [*Id.* ¶¶ 15, 27.] According to Singh, Rahman promised to pay him $.65 per mile that he drove while working for A&H. [*Id.* ¶¶ 16, 32.] Singh is apparently a hard worker. He "usually" drives eighteen hours a day every day of the week, totaling about 126 hours per week. [*Id.* ¶¶ 28-29, 31.] He estimates that he drives around 950 to 1,000 miles per day, averaging about 6,825 miles every week. [*Id.* ¶¶ 30-31.] Singh kept that work schedule for about four months (February 1 to May 31, 2023). [*Id.* ¶ 32.] Based on the promised payment of $.65 per mile, Singh estimates that he earned about $4,436.25 per week. [*Id.*]

Yet Defendants have not paid Singh "for all the days that he worked." [*Id.* ¶ 33.] Singh claims Defendants owe him about $16,000 in back wages. [*Id.* ¶ 34; *see also* Aff. of Gurvinder Singh ¶ 15 (Singh Aff.) (Docket No. 9-5).] And despite working over forty hours a week for several weeks, he claims that Defendants never paid him any overtime wages. [Compl. ¶ 35.]

Singh now sues Rahman and A&H, claiming they violated:  (1) the FLSA by not paying him federal statutory minimum wage; (2) the NJWPL by not paying him earned wages—that is, the promised $.65 per mile; and (3) the NJWHL by not paying him minimum and overtime wages. [*Id.* ¶¶ 48-66.]  Singh seeks his unpaid wages (the promised amount, as well as the statutory minimum wage and overtime wage), liquidated damages, and attorney's fees.  [Compl. Prayer for Relief Cl.]   After filing this suit, Singh personally served both Rahman and A&H.  [Decl. of Aaron Schweitzer, Esq. ¶ 3, Exs. 2-3 (Schweitzer Decl.) (Docket No. 9).]  Neither Rahman nor A&H served an answer or otherwise responded to this lawsuit.  Singh sought and obtained a Clerk's Entry of Default against them.  [Docket No.7.]  Singh now moves for default judgment against Rahman and A&H and for attorney's fees. [Docket Nos. 8, 11.]

## II.    DISCUSSION

### A.    Motion for Default Judgment Standard

By Federal Rule of Civil Procedure 55(b)(2), courts can enter default judgment against a properly served defendant who does not timely file a responsive pleading.  Before a court may entertain a default judgment motion, the Clerk of the Court must have entered default against the party who has not appeared or otherwise defended the lawsuit.  Fed. R. Civ. P. 55(a).  While courts retain significant discretion to enter default judgment, that discretion is limited because of the judiciary's "preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984).

Thus, before entering default judgment, a court must be satisfied that:  (1) it has jurisdiction, both subject matter and personal, over the case and defaulting party, and service of process was proper, (2) the party seeking judgment presented "a legitimate cause of action,"

and (3) entering default judgment would be "proper." *Chanel, Inc. v. Matos*, 133 F. Supp.3d 678, 683-84 (D.N.J. 2015) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012)).  To determine whether entering default judgment is appropriate, courts must examine:  "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.85 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).  In doing so, courts must accept as true only the complaint's factual allegations, not allegations on damages. *PPG Indus. Inc. v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 161 (3d Cir. 2022).

### 1.     Jurisdiction and Service

To start, the Court has subject matter jurisdiction over this lawsuit and personal jurisdiction over A&H and Rahman.  Singh's FLSA claim confers federal question jurisdiction.  28 U.S.C. § 1331.  And the Court can exercise supplemental jurisdiction over Singh's NJWPL and NJWHL claims. *Id.* § 1367.

Turning to personal jurisdiction, A&H is subject to this Court's general jurisdiction since it's a New Jersey domiciliary.  General jurisdiction exists when a defendant's "affiliations with the State are 'so continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  So, if a defendant (either an individual or corporation) is a domiciliary of the forum state, then the defendant is subject to the forum state's courts' general jurisdiction. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n 'individual's domicile,' or home, constitutes the paradigmatic 'forum

4

for the exercise of general jurisdiction.'" (quoting *Daimler*, 571 U.S. at 137)).  Corporations, like A&H, are "at home" in "the place of incorporation and principal place of business" and those places "are paradig[m] . . . bases for general jurisdiction."  *Daimler*, 571 U.S. at 137 (alteration and omission in original, citation and internal quotation marks omitted).  Because A&H incorporated in New Jersey and has its principal place of business here, *see* Compl. ¶ 10, the Court has general jurisdiction over it.

While Singh has not identified Rahman's citizenship in the Complaint, the Court has general jurisdiction over him because Singh had Rahman personally served in New Jersey. [Schweitzer Decl. ¶ 3, Exs. 2-3; *see also* Docket Nos. 4-5 (Returns of Summons).]  Service of process on an individual physically present in the forum state—sometimes called "tag" jurisdiction—confers general jurisdiction.  *See, e.g.*, *Burnham v. Sup. Ct. of Cal., Cnty. of Marin*, 495 U.S. 604, 619 (1990) (op. of Scalia, J.); *id.* at 628 (White, J., concurring in part and concurring in judgment); *id.* at 628-29 (Brennan, J., concurring in judgment); *id.* at 640 (Stevens, J., concurring in judgment); *see also Chanel*, 133 F. Supp. 3d at 684 (ruling court had personal jurisdiction over defendant where plaintiff served defendant at his New Jersey residence, reasoning that "in-forum service has long provided a basis to exercise personal jurisdiction").

Lastly, Singh properly served A&H and Rahman.  Federal Rule of Civil Procedure 4 allows service of process by, among other ways, making personal service on the individual to be served or serving that individual's "agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(A),(C); *see also id.* at 4(h)(1)(B) (authorizing service of process on corporation by serving the corporation's agent authorized to accept service). Singh served Rahman in his individual capacity and as A&H's agent.  [Schweitzer Decl. ¶ 3,

5

Exs. 2-3.] Rahman is A&H's registered agent, authorized to accept service on A&H's behalf. [Compl. ¶ 13.] So service of process is proper. *Trustees of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund, Vacation Fund, & Painters Dist. Council 711 Finishing Trades Inst. v. Leo Constructing, LLC.*, 718 F. Supp. 3d 436, 443 (D.N.J. 2024) (*Painters*) (finding service of process on defendant-company's registered agent proper).

### 2.    Legitimate Causes of Action

Accepting the Complaint's factual allegations as true, *see PPG Indus.*, 47 F.4th at 161, Singh has pled viable FLSA, NJWPL, and NJWHL claims.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract*." Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)).  With limited exceptions, the FLSA requires employers to pay their employees a minimum hourly wage for work performed.  29 U.S.C. § 206(a).  An employer who fails to pay an employee minimum wage is liable to the employee for "unpaid minimum wages" and "an additional equal amount as liquidated damages." *Id.* § 216(b).  The FLSA affords aggrieved employees the right to recover attorney's fees and costs from their employer for violating the statute. *Id.* To prevail on a FLSA claim, the plaintiff must show that: "(1) he was an employee of the defendant; (2) the defendant was engaged in commerce; and (3) the defendant failed to pay the federal minimum wage or overtime compensation for hours worked in excess of forty in a given week." *Morales v. Aqua Pazza LLC*, 2022 WL 1718050, at *3 (D.N.J. May 27, 2022) (citations and internal quotation marks omitted).

NJWHL is New Jersey's counterpart to the FLSA. *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  It too requires employers to pay employees a

minimum wage and an overtime wage for hours worked above forty hours per week. N.J. Stat. Ann. § 34:11-56a4(a)-(b). Like the FLSA, NJWHL allows aggrieved employees to sue an employer for unpaid wages and liquidated damages in "an additional amount equal to not more than 200 percent of the amount of the unpaid minimum wages[.]" *Id.* § 34:11-56a25; *see also Zuniga v. Am Framing LLC*, 2022 WL 203234, at *5 (D.N.J. Jan. 24, 2022) (awarding liquidated damages under NJWHL for unpaid overtime wages). On top of liquidated damages, the NJWHL affords aggrieved employees the right to recover attorney's fees and costs from their employer. N.J. Stat. Ann. § 34:11-56a25. "New Jersey courts have repeatedly emphasized that the NJWHL is to be construed broadly, and that it was purposely drafted in parallel with the FLSA." *Thompson v. Real Est. Mortg. Network*, 106 F. Supp. 3d 486, 490 (D.N.J. 2015). So courts in this District consider FLSA and NJWHL claims in the same breath. *See, e.g.*, *Qu Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, 2018 WL 1027446, at *3 (D.N.J. Feb. 23, 2018).

Under the FLSA and NJWHL, an employer is "any person . . . acting directly or indirectly in the interest of an employer in relation to any employee." *Morales*, 2022 WL 1718050, at *3 (citations and internal quotation marks omitted). "A 'single individual may stand in the relation of an employee to two or more employers at the same time.'" *Id.* (quoting *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012)). "The determination of employer status depends on whether the alleged employer exhibited control." *Zuniga*, 2022 WL 203234, at *3; *see also Thompson*, 748 F.3d at 153 ("[A]n individual is subject to FMLA liability when he or she exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." (citation and internal quotation marks omitted)). Courts

7

look to several factors to determine whether an individual qualifies as an employer or joint employer within the FLSA's and NJWHL's meaning, such as:

> 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*In re Enter.*, 683 F.3d at 469 (discussing "joint employer"); *see also Zuniga*, 2022 WL 203234, at *3.

Turning to the NJWPL, that law "'governs the time and mode of payment of wages due to employees,' and is a remedial statute to be construed liberally." *Maia v. IEW Constr. Grp.*, 313 A.3d 887, 895 (N.J. 2024) (quoting *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 457 (N.J. 2015)). It "is designed to protect an employee's wages and to assure timely and predictable payment." *Hargrove*, 106 A.3d at 463. The NJWPL requires employers to pay wages at certain regular intervals. N.J. Stat. Ann. § 34:11-4.2. "[W]ages" under the NJWPL means:

> the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto.

*Id.* § 34:11-4.1(c). An "employer" under the NJWPL is, among other things, "any individual" or "corporation . . . employing any person in this State." *Id.* § 34:11-4.1(a).

When an "employer fails to pay the full amount of wages to an employee agreed to," the aggrieved employee may sue the employer to recover "the full amount of any wages due[.]" *Id.* § 34:11-4.10(c). On top of the earned wages, the employee can recover "liquidated

damages" in an amount "equal to not more than 200 percent of the wages lost or . . . due," along with costs and attorney's fees.  *Id.*

Here, Singh's Complaint plausibly alleges that A&H and Rahman jointly employed Singh within the FLSA's, NJWHL's, and NJWPL's meanings. Indeed, Rahman owns and manages A&H, having the power to hire and fire employees, supervise employees and set employee work schedules, determine pay rates and method of payment, and maintain employee records for A&H.  [Compl. ¶ 13.]  According to Singh, A&H operates in interstate commerce.    [*Id.* ¶¶ 11-12.]  Rahman hired Singh to work for A&H, set his pay rate and schedule, and provided him the locations to pickup and drop-off loads.  [*Id.* ¶¶ 14, 27.]  The "economic realities" of Singh's relationship with A&H and Rahman reveal that they jointly employed Singh.  *In re Enter.*, 683 F.3d at 469; *see also Morales*, 2022 WL 1718050, at *4 (finding similar allegations stated a plausible claim of joint employment).

Onto the statutory violations, Singh claims Rahman promised to pay Singh $.65 per mile that he drove for A&H.  [*See* Compl. ¶¶ 16, 32.]  Singh worked for A&H for about four months, averaging about 126 hours of work a week.    [*Id.* ¶¶ 31-32.]  Yet neither A&H nor Rahman paid Singh for all the days he worked.  [*Id.* ¶ 33.]  Singh claims that A&H and Rahman owe him around $16,000 in back wages. [*Id.* ¶ 34.]  They also never paid him any overtime wages even though he worked more than forty hours a week for several weeks.  [*Id.* ¶¶ 31, 35.]  By not paying Singh the required minimum and overtime wages, Rahman and A&H violated the FLSA and NJWHL.  *Zuniga*, 2022 WL 203234, at *4 (finding similar allegations sufficient to show FLSA and NJWHL violations for default judgment purposes); *see also Qu Wang*, 2018 WL 1027446, at *3 (same).   And by failing to pay Singh the agreed-on $.65 per mile as compensation, Rahman and A&H violated the NJWPL.  *Morales*, 2022 WL

1718050, at *4 (finding employees stated NJWPL claim for default judgment purposes where they alleged they provided services to defendant, were due a fixed weekly payment but defendants failed to pay them).

### 3.    *Chamberlain* Factors

Having considered the *Chamberlain* factors, the Court finds entering default judgment against A&H and Rahman on liability appropriate.

First, Singh will suffer prejudice without default judgment because he would have no other way to vindicate his statutory rights and recoup his unpaid wages.  *Qu Wang*, 2018 WL 1027446, at *3 (granting default judgment on employee's FLSA and NJWHL claims, finding employee would be prejudiced because employers' "failure to respond leaves [employee] with no other means to vindicate his claims"); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding plaintiff would suffer prejudice without default judgment "as Plaintiff has no other means of seeking damages for the harm allegedly caused by Defendant").  Indeed, the FLSA, NJWHL, and NJWPL were enacted to ensure workers are paid fairly so they can reap the fruits of their labor.  *See generally Smiley v. E.I. Dupont Nemours & Co.*, 839 F.3d 325, 329-30 (3d Cir. 2016) (discussing the FLSA's "broad remedial purpose" (citation and internal quotation marks omitted)); *Hargrove*, 106 A.3d at 457-58, 463 (reviewing NJWPL's and NJWHL's purposes).

Second, the Court cannot even consider meritorious defenses because A&H and Rahman never answered or responded to this lawsuit.  *Qu Wang*, 2018 WL 1027446, at *3; *see also Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *3 (D.N.J. Oct. 21, 2016) (entering default judgment in FLSA action, reasoning that "in the absence of any responsive

10

pleading and based upon the facts alleged in the Complaint, Defendants do not have a meritorious defense").

Lastly, given Rahman's and A&H's failure to appear, the Court finds them culpable in their default. *Painters*, 718 F. Supp. 3d at 444; *see also Mondragon v. Sushitobox*, 2023 WL 5370245, at *3 (D.N.J. Aug. 22, 2023) ("[B]ecause there is nothing before the Court demonstrating that defendants' failure to respond was due to something other than willful negligence, the Court may infer defendants' culpability from their default.").

### B.    Damages

When adjudicating a default judgment motion, courts do not accept as true the plaintiff's claimed damages. *PPG Indus.*, 47 F.4th at 161. The plaintiff shoulders the burden to prove damages. *Punter v. Jasmin Intern. Corp.*, 2014 WL 4854446, at *3 (D.N.J. Sept. 30, 2014). Courts have "considerable latitude in determining the amount of damages[.]" *Paniagua Grp., Inc. v. Hospitality Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016) (citation and internal quotation marks omitted). Federal Rule of Civil Procedure 55(b) allows courts to hold "hearings or make referrals" to, among other things, "determine the amount of damages." Fed. R. Civ. P. 55(b)(2). A hearing is unnecessary if the Court "ensures that there is a basis for the damages specified in the default judgment." *Paniagua*, 183 F. Supp. 3d at 605 (cleaned up, citation and internal quotation marks omitted).

In FLSA and NJWHL cases, some courts in this District have found an aggrieved employee may establish damages for unpaid compensation "through estimates based on his own recollection." *Mondragon*, 2023 WL 5370245, at *3 (citation and internal quotation mark omitted). Other courts have held hearings (or referred the matter to a magistrate judge for a hearing) to determine the amount of damages. *Punter*, 2014 WL 4854446, at *3.

Singh seeks over $340,000 in damages, the bulk of that amount coming from statutory liquidated damages under the NJWHL and NJWPL. [Schweitzer Decl. ¶ 11, Ex. 6 (Compensation Chart) (Docket 9-6).]  To support his damages, Singh relies on his own affidavit and the Compensation Chart.  [*Id.*; *see also* Singh Aff. ¶¶ 10-16, 23-24.]  The Compensation Chart lays out, among other things, the hours a day Singh worked, the number of hours a week he worked, the miles per week he drove for A&H, and the total number of weeks he worked.  [Compensation Chart.]  Based on the FLSA's $7.25 minimum hourly rate, Singh claims Rahman and A&H owe him around $15,660 in unpaid minimum wages and an additional $15,660 in FLSA liquidated damages.  [*Id.*]  For his NJWHL claim, Singh claims Rahman and A&H owe him around $1,638 in minimum wages and $559 in overtime wages per week for the four months he worked.  [*Id.*]  Likewise, he claims Rahman and A&H owe him $4,436.25 per week for his NJWPL claim—the agreed-on $.65 per mile.  [*Id.*]  For both his NJWHL and NJWPL claims, he asserts a weekly "shortfall" of $6,633.25 (minimum wage, overtime wage, and the agreed-on compensation).  [*Id.*]  In total, Singh claims Rahman and A&H owe him $113,712.86 in unpaid wages for the four-month period he worked for them.  [*Id.*]  That amount balloons to a separate, $227,425.71 in liquidated damages given the NJWHL's and NJWPL's 200% liquidated damages provisions.  N.J. Stat. Ann. §§ 34:11-4.10(c), 34:11-56a25.

Having reviewed Singh's affidavit and Compensation Chart, the Court cannot award damages without additional evidence.  And Singh needs to address conflicting evidence in his papers.

First, Singh presents conflicting evidence to support his NJWPL claim based on Rahman's and A&H's promise to pay him $.65 per mile.  For example, in his affidavit and

the Complaint, Singh claims Rahman and A&H owe him around $16,000 in back wages because "they failed to pay [him] for all the days he worked." [Compl. ¶¶ 33-34; *see also* Singh Aff. ¶¶ 15, 18.] Yet in the Compensation Chart, Singh apparently seeks unpaid wages based on mileage for the entire four months he worked for Rahman and A&H, which totals around $75,000. [Compensation Chart.] Singh must explain the inconsistences between his affidavit and the Compensation Chart.

Second, Singh offers no documentary evidence to support his damages. Indeed, he has submitted no time sheets or driving logs reflecting the number of miles he drove for A&H. *See Ivanov v. Dubno Logistics Corp.*, 2019 WL 13237716, at *3 (S.D. Fla. July 18, 2019) (granting truck driver's default judgment against employer and awarding damages where driver submitted affidavit detailing the number of miles driven and hours logged, along with the driving logs). And Singh never explains how he calculated his overtime rate.

Third, Singh appears to be seeking a double recovery by asking for both minimum wage and the agreed-on payment per mile. [Compensation Chart.] In the Compensation Chart, Singh doesn't apply the agreed-on payment per mile to his claimed unpaid minimum wages. Under the NJWHL, "wages" means, among other things, "any moneys due an employee from an employer for services rendered or made available by the employee to the employer as a result of their employment relationship[.]" N.J. Stat. Ann. § 34:11-56a1(d). In the FLSA context, payments based on miles driven qualify as "wages" since they are renumeration for employment, and thus, included in the minimum wage calculation. *See Baouch v. Werner Enters., Inc.*, 908 F.3d 1107, 1111, 1114-18 (8th Cir. 2018) (holding payment to drivers based on miles driven are "renumeration for employment" and must be included in the employer's minimum wage calculation for FLSA purposes). Singh's pay structure is tied

to the work he performed—that is, miles driven.  *Id.* at 1116.   Yet Singh never applies the amount he's owed for miles driven to his unpaid minimum wages.  That's problematic.

Indeed, suppose Singh drove on average 50 miles an hour at his $.65 per mile rate. That amounts to $32.50 per hour.  While Singh asserts NJWHL minimum wage hourly is $13.00, see Compensation Chart, the correct statutory rate for 2023 when he worked for A&H was $14.00, see N.J. Stat. Ann. § 34:11-56a4(a); see also N.J. Admin. Code § 12:56-3.1(b)(4). In any event, the agreed-on payment per mile in that scenario exceeds NJWHL (and the FLSA) minimum wage.  Singh will have to explain why he would be entitled to both statutory minimum wage and the agreed-on payment per mile.

Lastly,  Singh  seeks  both  liquidated  damages  and  prejudgment  interest. [Compensation Chart.]    Courts in this District do not award prejudgment interest when awarding the plaintiff liquidated damages under the FLSA and NJWHL.  *See, e.g.*, *Zuniga*, 2022 WL 203234, at *5.  This is so to avoid a double recovery since "liquidated damages and pre-judgment interest both serve to compensate an employee for losses caused by delayed receipt of wages to which he is entitled."  *Liu v. New Dickson Trading, LLC*, 2023 WL 3736351, at *8 (D.N.J. May 30, 2023) (quoting *Looi v. Wang*, 2015 WL 64650, at *3 (D.N.J. Jan. 5, 2015)); *accord Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945) ("To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages.").

Given the inconsistencies in Singh's affidavit and the Compensation Chart, coupled with the lack of supporting evidence, the Court finds a hearing necessary to determine damages.  By Federal Rule of Civil Procedure 55(b), the Court refers this matter to Magistrate

Judge King for an evidentiary hearing on damages. After the hearing, Magistrate Judge King shall issue a Report and Recommendation on the amount of Singh's damages, including Singh's request for attorney's fees under the FLSA, NJWHL, and NJWPL.

## III.    CONCLUSION

For the above reasons, the Court **GRANTS**, **in part**, and **RESERVES**, **in part**, Singh's default judgment motion (Docket No. 8), and **RESERVES** on Singh's motion for attorney's fees (Docket No. 11). An accompanying Order of today's date shall issue.

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge

Dated: November 22, 2024